1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

DONNA BLAND MUNSON,

8                                    Plaintiff,

Case No. C16-5737-TSZ

9            v.

**ORDER REVERSING AND**
**REMANDING FOR FURTHER**
**ADMINISTRATIVE**
**PROCEEDINGS**

10

NANCY A. BERRYHILL, Acting
11   Commissioner of Social Security,[1]

12                                    Defendant.

13          Donna Bland Munson seeks review of the denial of her application for Title II Disability

14   Insurance Benefits (DIB).  Ms. Munson contends the Administrative Law Judge (ALJ) violated

15   her due process rights in declining to reopen her prior DIB claim and applying res judicata with

16   respect to that time period.  Dkt. 7 at 1, 3-6.  Ms. Munson further contends the ALJ erred in: (1)

17   failing to provide legally sufficient reasons for rejecting medical source opinions; (2) failing to

18   find trichotillomania to be a severe impairment; (3) failing to provide clear and convincing

19   reasons for rejecting her own symptom testimony; and (4) failing to provide germane reasons for

20   rejecting the lay testimony.  Dkt. 7 at 1.  As discussed below, the Court **REVERSES** the

21

22   [1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to
     Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as
23   defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties
     should reflect this change.

1  Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

2  under sentence four of 42 U.S.C. §405(g).

### BACKGROUND AND ALJ's DECISION

4      Ms. Munson filed a previous application for DIB in August 2011 alleging disability as of

5  August 31, 2007.  Tr. 21, 90.  Ms. Munson's application was denied initially and on

6  reconsideration.  On February 21, 2013, Ms. Munson filed an untimely request for a hearing

7  before an ALJ but argued she had "good cause" under 20 C.F.R. §404.911 for the late request.

8  Tr. 136-137, 155.  Specifically, Ms. Munson's attorney submitted an affirmation stating that he

9  had filed a timely request for a hearing in April 2012 and suggesting that there may have been a

10  "glitch" in the new electronic submission process for hearing requests.  Tr. 155.  Ms. Munson

11  also submitted an affidavit stating she had spoken to someone at Social Security in September

12  2012 who indicated an April 2012 hearing request was received.  Tr. 156.

13      On July 3, 2017, ALJ Adams issued an Amended Order of Dismissal finding that Ms.

14  Munson had not established good cause for her untimely hearing request and dismissing her

15  request for a hearing.  Tr. 137.  ALJ Adams stated that Ms. Munson's attorney could not cite the

16  specific date in April 2012 that he allegedly submitted the hearing request nor could he offer any

17  proof that he had filed the hearing request in a timely manner.  *Id.*  He further noted that there

18  was no proof of a "glitch" in the system that may have caused the alleged April 2012 hearing

19  request to go missing.  *Id.*  Because ALJ Adams dismissed Ms. Munson's request for a hearing,

20  the reconsideration determination dated February 27, 2012, finding Ms. Munson not disabled

21  remained in effect.  Tr. 21.  The Appeals Council denied review of ALJ Adams' Amended Order

22  of Dismissal.  Tr. 138-139.  Ms. Munson did not seek review at the district court level.  Tr. 47.

23      Ms. Munson filed the instant DIB application on May 21, 2013, alleging disability as of

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

1   July 1, 2007, two months earlier than the date alleged in her August 2011 application.  Tr. 219-

2   220.  Her application was denied initially and on reconsideration.  Tr. 21, 115-132.  The ALJ

3   conducted a hearing on August 18, 2014, during the course of which he stated he could not

4   reopen Ms. Munson's prior claim because it was an administratively final prior decision.  Tr. 47-

5   48.  Ms. Munson argued that, pursuant to 20 C.F.R. §404.989, the ALJ could reopen an earlier

6   application for "good cause" which is satisfied where "new and material evidence is furnished."

7   Tr. 334.  Ms. Munson contended new and material evidence was submitted including the medical

8   opinion of Steven Mitchell M.D., as well as lay witness testimony, which should be considered

9   by the ALJ in deciding whether there was good cause to reopen her prior application.  *Id.*  She

10  also argued that the "mix-up" concerning the request for hearing on the first application also

11  justified reopening that application.  *Id.*  On February 10, 2015, the ALJ issued a decision stating

12  he found "no basis" to reopen Ms. Munson's prior claim and citing 20 C.F.R. §404.988 which

13  outlines the circumstances under which a prior claim may be reopened.  Tr. 21.  As such, the

14  ALJ determined that the reconsidered determination issued on the first application on February

15  27, 2012, was final and binding with respect to the issue of disability through that date.  Tr. 21.

16  The ALJ indicated he would only consider whether Ms. Munson was disabled at any time from

17  February 28, 2012, through her date last insured (DLI) of June 30, 2012.  Tr. 21-22.

18          Utilizing the five-step disability evaluation process,[2] the ALJ found that Ms. Munson had

19  not engaged in substantial gainful activity during the limited period from February 28, 2012 to

20  June 30, 2012.  Tr. 25.  During that period, the ALJ found Ms. Munson had severe impairments

21  of affective disorder, anxiety disorder, and personality disorder but that these impairments did

22

23

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

not meet or equal the requirements of a listed impairment.[3]  *Id.*  The ALJ further found that, during the period in question, Ms. Munson had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with several non-exertional limitations. Specifically, Ms. Munson could perform simple, routine tasks and follow short, simple instructions, and she required a work environment without public contact and minimal supervisor contact.  *Id.*  The ALJ specified that minimal contact did not preclude all contact but rather meant that contact does not occur regularly, it did not preclude simple and superficial exchanges and it did not preclude being in proximity to the supervisor.  *Id.*  Ms. Munson could work in proximity to a few co-workers but not in a cooperative or team effort.  *Id.*  She required a work environment that required no more than minimal interactions with a few co-workers.  *Id.*  With this RFC, Ms. Munson could not perform past relevant work during the subject period.  *Id.* However, as there were jobs that existed in significant numbers in the national economy that Ms. Munson could perform, she was not disabled.  *Id.*  The Appeals Council denied Ms. Munson's request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-6.

## DISCUSSION

### A.    Due Process

Ms. Munson contends the ALJ violated her due process rights by denying her request to reopen her prior application.  Dkt. 7 at 1, 3-6.  Ms. Munson notes that, at the hearing, the ALJ erroneously stated that he "could not" reopen her prior claim and, in his decision, declined to reopen the claim "without discussing or even mentioning the good cause standard in his decision."  Tr. 47-48.  The Commissioner argues that an ALJ's decision not to reopen a prior claim is discretionary, not a final determination subject to judicial review, and that Ms. Munson

---

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

1  fails to articulate a colorable constitutional claim.  Dkt. 14 at 3-4.

2        The Court has jurisdiction pursuant to statute to review only a "'final decision of the

3  [Social Security Administration] made after a [statutorily mandated] hearing.'"  *Dexter v.*

4  *Colvin*, 731 F.3d 977, 980 (9th Cir. 2013) (quoting *Califano v. Sanders*, 430 U.S. 99, 109

5  (1977)); 42 U.S.C. §405(g).  An ALJ's decision whether, for good cause shown, to entertain an

6  untimely hearing request or to reopen an earlier application is strictly discretionary, not final, and

7  thus is not generally reviewable by a district court.  *Id.*  However, a discretionary decision by the

8  Administration that is not a final decision may be subject to an exception where the

9  Commissioner's decision "is challenged on constitutional grounds."  *Evans v. Chater*, 110 F.3d

10  1480, 1482 (9th Cir. 1997) (citing *Sanders*, 430 U.S. at 109); 42 U.S.C. § 405(g).  This

11  "exception applies to any colorable constitutional claim of due process violation that implicates a

12  due process right either to a meaningful opportunity to be heard or to seek reconsideration of an

13  adverse benefits determination." *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001)

14  (internal quotation marks and citation omitted).  "[A] mere allegation of a due process violation

15  is not a colorable constitutional claim."  *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008)

16  (internal quotation marks and citation omitted). "Rather, the claim must be supported by facts

17  sufficient to state a violation of substantive or procedural due process."  *Id.* (internal quotation

18  marks and citation omitted).

19        Section 404.988 of Title 20 of the Code of Federal Regulations sets forth a variety of

20  circumstances under which the Commissioner may reopen a prior determination or claim.

21  Subsection (b) of the regulation provides that a determination or decision may be reopened

22  "[w]ithin four years of the date of the notice of the initial determination if we find 'good cause',

23  as defined in § 404.989, to reopen the case."  20 C.F.R. §404.988.  Section 404.989 provides that

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

1  "good cause" to reopen a determination or decision will be found if: "(1) New and material

2  evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was

3  made; or (3) The evidence that was considered in making the determination or decision clearly

4  shows on its face that an error was made."  20 C.F.R. § 404.989.

5      Ms. Munson argues that ALJ Kennedy should not have relied on ALJ Adams' finding

6  denying Ms. Munson's request for reopening "since the evidence [ALJ] Adams considered in

7  making his decision clearly shows on its face that an error was made."  Dkt. 7 at 5.  Ms. Munson

8  further argues that she provided new and material evidence in the form of treatment notes, the

9  opinions of Steven R. Mitchell, M.D., Ph.D., Gary Connor, Ph.D., and Robert T. Hogg, M.D., as

10 well as several lay witness statements describing Ms. Munson's functioning dating back to 2007,

11 which also provided a basis for reopening.  *Id.*  She contends the ALJ's refusal to reopen her

12 prior claim "without discussing or even mentioning the good cause standard in his decision"

13 violated her due process rights.  *Id.* at 4.

14     Ms. Munson contends the ALJ incorrectly stated at the hearing that he "could not" reopen

15 Ms. Munson's prior claim because it was an "administratively final prior decision."  Tr. 47-48.

16 Even assuming the ALJ misstated the standard for reopening a prior claim at the hearing, in his

17 decision the ALJ demonstrates that he applied the proper standard.  Specifically, the ALJ states

18 that he "do[es] not find any basis for reopening the claimant's prior Title II applications" and

19 cites 20 C.F.R. §404.988.  Tr. 21, 47-48; 20 C.F.R. § 404.988.  Ms. Munson also argues that the

20 ALJ does not even mention the "good cause" standard.  However, while the ALJ may not have

21 recited the regulatory language, 20 C.F.R. §404.988 includes the provision that a claim may be

22 reopened within four years of the date of the notice of the initial determination upon a finding of

23 "good cause", as defined in 20 C.F.R. §404.989.  In finding no basis to reopen the prior claim

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

1    under 20 C.F.R. §404.988, the ALJ indicates that he considered whether there was good cause to

2    do so.

3        Ms. Munson appears to seek to argue the merits of her good cause argument.  Dkt. 7 at 3-

4    6.  However, the ALJ's decision to deny reopening of a prior claim is discretionary and Ms.

5    Munson is not entitled to judicial review of the ALJ's good cause determination on the merits.

6    *See Dexter*, 731 F.3d 977.  Rather, the Court is limited to considering whether a colorable

7    constitutional claim is raised.  While the ALJ in this case might have provided a more detailed

8    explanation, in stating he found no basis to reopen the prior claim under 20 C.F.R. §404.988, he

9    also indicated that he had considered the relevant factors for reopening a prior claim under the

10   regulations and determined there was no basis for doing so. [4]  Tr. 21.  Ms. Munson cites no case

11   law nor does she make any further arguments that due process requires more than this.

12   Accordingly, Ms. Munson fails to raise a colorable due process claim and the Court cannot find

13   the ALJ erred in applying res judicata for the period that was the subject of the prior claim.

14   **B.    Medical Opinion Evidence**

15       The ALJ must provide "clear and convincing reasons" to reject the uncontradicted

16   opinion of a treating or examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir.

17   1996).  When contradicted, a treating or examining doctor's opinion may not be rejected without

---

[4] The Court notes that in *Dexter v. Colvin*, 731 F.3d 977, 981 (9th Cir. 2013), the Ninth Circuit found a colorable constitutional due process claim where the claimant provided a facially legitimate reason that was specifically listed as an example of "good cause" under the Commissioner's regulations and the ALJ failed to address it.  However, *Dexter* dealt with a different regulation, 20 C.F.R. §404.911(b), which sets forth the factors the ALJ must consider in determining whether there is "good cause" for excusing a claimant's untimely hearing request.  *Id.*  The claimant in *Dexter* articulated two reasons that were listed as specific examples of "good cause" under 20 C.F.R. § 404.911(b), namely the claimant's own illness and that of her family member, and the ALJ ignored those reasons entirely in finding the claimant had not shown good cause.  *Id.*  Accordingly, the Court in *Dexter* held that "when the Commissioner promulgates regulations explaining what circumstances may constitute good cause and an applicant relies on one or more of them in explaining her delay, some explanation is required of why the applicant's potentially valid reasons for good cause are rejected."  *Id.*  In contrast to *Dexter*, in this case there are no examples listed under 20 C.F.R. §404.989 of what constitutes "new and material evidence" or clear error in the prior determination that would satisfy "good cause" to reopen a prior claim.  *Dexter*, 731 F.3d at 981.

1    "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.*

2       **1.**  ***Gary Connor, Ph.D.***

3       Ms. Munson contends the ALJ erred in evaluating the opinion of Dr. Connor.  Dkt. 7 at

4    6-9.  The Court agrees.

5       Dr. Connor evaluated Ms. Munson in December 2012.  Tr. 823-825.  Ms. Munson was

6    referred to Dr. Connor by her treating psychiatrist Dr. Mitchell who described her psychological

7    problems as "mixed, highly varied and puzzling" and sought clarification of her diagnoses.  *Id.*

8    Dr. Connor interviewed Ms. Munson as well as her husband Scott Munson and conducted

9    clinical testing, including the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and

10   Million Clinical Multiaxial Inventory III (MCMI-III). *Id.*  Dr. Connor opined that the testing

11   suggests that Ms. Munson is "severely anxious, depressed as well as schizoid, dependent and

12   confused." Tr. 824.  He observed that Ms. Munson was very quiet and gave short and almost

13   unintelligible answers to questions.  *Id.*  He noted that, during the personality profiles it took her

14   twice as long to complete the inventories as it would most people and it took great effort for her

15   to concentrate and pay attention to the task at hand.  *Id.*  He found that "as sometimes happens",

16   Ms. Munson's symptoms did not meet a "neat, single, well defined disorder …" but diagnosed

17   her with major depression, generalized anxiety disorder and avoidant personality disorder.  *Id.*

18   Dr. Connor opined that,

19       For years now, since 2007, Donna has not been functional due to
20       crippling anxiety, severe bouts of withdrawl and periods of isolation,
         periods of highly dependent behavior but at the same time fearful of
21       caretakers with low trust in them.  She can be immobilized by depression
         and fatigue as well as an overwhelming need to socially withdraw.  The
22       MMPI-2 as well as the MCMI-III show a pattern of severe clinical
         maladjustment.  She feels overwhelmed with anxiety, tension and
         depression.  She feels chronically helpless and alone.  Decisions are
23       difficult as her life is disorganized and pervasively unhappy.  She is
         chronically operating at a low level of cognitive efficiency.  It is the

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

> Author's opinion that Donna is not capable of vocational self support. It is the Author's opinion, as well, that Donna is not capable of finding and keeping a job.

Tr. 824-825. Dr. Connor assigned Ms. Munson a Global Assessment of Functioning (GAF) score of 60.[5]

The ALJ discounted Dr. Connor's opinion because: (1) it was rendered six months after the subject period and does not provide a specific assessment of Ms. Munson's functional capacity prior to June 30, 2012; (2) the GAF score was inconsistent with the rest of the opinion; (3) the opinion does not mention the results or validity of the MMPI-2 and the MCMI-III; (4) Dr. Connor did not ask Ms. Munson if she had taken extra medication; and, (5) the opinion appeared to rely solely on Ms. Munson's self-reports, which the ALJ found not fully credible. Tr. 28-29. However, Dr. Connor submitted a post-hearing opinion to the Appeals Council in June 2015, which clarifies his December 2012 opinion and undermines the reasons the ALJ provided for discounting that opinion. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.").

With respect to the ALJ's first rationale, Dr. Connor's post-hearing opinion states that Ms. Munson's mental functional limitations did exist prior to June 30, 2012, and that they were "severe", meaning they caused "very serious interference with the person's ability to function

---

[5] A GAF score is "a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (internal quotation marks and citation omitted). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).

independently, appropriately, effectively, and on a sustained basis, i.e., more than 20% of the time." Tr. 871, 875. Dr. Connor also articulated specific functional limitations which, he opined, existed prior to June 30, 2012. Tr. 875-879. Specifically, Dr. Connor found Ms. Munson had several marked and severe limitations in the areas of sustained concentration and persistence, social interaction, and adaptation. *Id.* He stated that the ratings were based on the signs and symptoms described in his December 2012 opinion and the fact that they "are usually developed over a long period of time so their existence 6 months prior to her exam [was] highly likely." Tr. 877.

With respect to the ALJ's second rationale, to the extent the ALJ intended to reject Dr. Connor's December 2012 opinion as inconsistent with the GAF score of 60[6], Dr. Connor's post-hearing opinion explains that, in hindsight, he should have assessed Ms. Munson's GAF as 50[7] (rather than 60) because she has "serious impairment in social or occupational functioning." Tr. 871-872. A GAF score of 50, rather than 60, does not appear to be inconsistent with the remainder of Dr. Connor's opinion. Dr. Connor also points out the limitations of the GAF score as an evaluative tool, noting it is no longer utilized in the DSM-V partly because of its subjectivity and that it is neither a psychometric instrument nor inventory whose usefulness rests on published validity studies. *Id.*

With respect to the ALJ's third rationale, Dr. Connor's post-hearing opinion points out, correctly, that he did mention the results of the MMPI-2 and MCMI-III inventories on pages two

---

[6] The Court notes that the Commissioner states in her brief that, although the ALJ noted the apparent inconsistency between Dr. Connor's opinion and the GAF score of 60, he did not rely upon it as a basis for rejecting Dr. Connor's opinion. Dkt. 14 at 11, n. 3. Whether the ALJ did or did not intend to rely on the claimed inconsistency with the GAF score to discount Dr. Connor's opinion, as explained above, Dr. Connor's subsequent opinion undermines that rationale.

[7] A GAF score of 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g. no friends, unable [to] keep a job)." Tr. 871-872.

1   and three of his December 2012 report.  Tr. 874.  For instance, the December 2012 report states

2   that these inventories "show a pattern of severe clinical maladjustment."  Tr. 825.  Dr. Connor

3   also states that the inventory results were implicitly encompassed in the diagnoses of major

4   depression, generalized anxiety disorder and avoidant personality disorder listed in his report.

5   Tr. 825, 874.  Dr. Connor further indicates that validity was not an issue and that the inventory

6   results were acceptable for clinical and treatment purposes.  Tr. 874.  Dr. Connor explains that

7   his December 2012 report was written for Dr. Mitchell and that both doctor's understood that

8   when Dr. Connor wrote a report it was not necessary to go into detail regarding the validity of

9   each inventory unless there was a problem.  *Id.*

10       With respect to the ALJ's fourth rationale, Dr. Connor states he does not know whether

11  Ms. Munson took her prescribed medication but it was his practice "to always urge a client who

12  is going to be administered an inventory to be well rested and under as little stress as possible

13  before the event."  Tr. 872.  Ms. Munson did indicate in her testimony that she sometimes took

14  "extra" medication when she went on trips.  Tr. 60, 68-90.  However, there is no evidence that

15  Ms. Munson took additional medication, beyond her normal prescription, prior to her

16  examination, nor did the ALJ inquire about that issue at the hearing.  Thus, the ALJ's rationale

17  that Ms. Munson *may* have taken additional medication which *may* have affected her

18  performance on the examination is largely speculative and is insufficient, without more, to

19  undermine the validity of Dr. Connor's opinion.

20       With respect to the ALJ's fifth rationale, Dr. Connor's post-hearing opinion states that his

21  findings are based on various factors including the test results, Ms. Munson's appearance and

22  behavior, her spouse's descriptions of Ms. Munson's behavior and social history, Dr. Mitchell's

23  comments over the phone, and his own thirty-years of professional experience.  Tr. 872.  This

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

1  demonstrates that Dr. Connor's opinions were not based solely on Ms. Munson's self-reports.

2  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("when an opinion is not more

3  heavily based on a patient's self-reports than on clinical observations, there is no evidentiary

4  basis for rejecting the opinion.").

5        In light of Dr. Connor's post-hearing opinion, substantial evidence does not support the

6  ALJ's reasons for rejecting the December 2012 opinion.  Accordingly, on remand, the ALJ

7  should reevaluate Dr. Connor's December 2012 opinion in addition to and in light of the post-

8  hearing opinion.

9        *2.    **Steven R. Mitchell, M.D., Ph.D.***

10        Ms. Munson also contends the ALJ erred in evaluating the opinion of her treating

11  psychiatrist, Dr. Mitchell.  Dkt. 7 at 9-11.  The Court disagrees.

12        In July 2013, Dr. Mitchell submitted a report stating:

13              during both her initial evaluation with me and her evaluation with Dr.
              Connor[,] Ms. Munson was significantly disorganized in both her
14              presentation and in the way she responded to questions.  During both
              evaluations, Ms. Munson took much longer to answer routine questions.
15              In order to complete the evaluation with me, which typically can be done
              in a one hour session, Ms. Munson required a total of four sessions.
16              Similarly, according to his report, Dr. Connor found that Ms. Munson
              took approximately twice as long to complete standard psychological
17              testing than it typically takes patients to complete.

18  Tr. 854-856.  Based on his own evaluation, Dr. Mitchell diagnosed Ms. Munson with major

19  depression, recurrent, severe, generalized anxiety disorder, trichotillomania (hair pulling), panic

20  disorder, probably obsessive compulsive disorder, probable agoraphobia, as well as attention

21  deficit-hyperactivity disorder.  Based on the results of Dr. Connor's testing, Dr. Mitchell found

22  Ms. Munson may also have dependent and avoidant traits and schizoid features.  *Id.*  Dr. Mitchell

23  opined that "the cumulative impact of the multiple psychiatric diagnoses that Ms. Munson is

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

1  dealing with effectively precludes her from functioning adequately in the workplace." *Id.*

2        The ALJ rejects Dr. Mitchell's opinion as conclusory because it includes no specific

3  assessment of her functional capacity prior to June 30, 2012. Tr. 28. An ALJ may reject a

4  medical opinion that includes "no specific assessment of [the claimant's] functional capacity"

5  during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

6  Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's]

7  symptoms translate into specific functional deficits which preclude work activity." *Morgan v.*

8  *Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999). In addition, an ALJ need not

9  accept a medical opinion that is brief, conclusory, and inadequately supported by clinical

10  findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, Dr. Mitchell concludes

11  that Ms. Munson's diagnoses would preclude her from functioning adequately in the workplace

12  but fails to explain how her diagnoses limit her vocationally. Moreover, Dr. Mitchell rendered

13  his opinion in July 2013 and, although he indicates he saw Ms. Munson at least once prior to her

14  date last insured, he does not specifically relate his opinion back to the relevant period, i.e. prior

15  to June 30, 2012. Ms. Munson does not challenge this basis for discounting Dr. Mitchell's

16  opinion and it is a valid reason supported by substantial evidence.[8]

17        **3.    Robert T. Hogg, M.D.**

18        Ms. Munson contends the ALJ erred in evaluating Dr. Hogg's opinion. Dkt. 7 at 11-12.

19  The Court disagrees.

20  _____

21  [8] The ALJ also gave other reasons for discounting Dr. Mitchell's opinion. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Dr. Mitchell's opinion. *See Carmickle v. Comm'r.,*

22  *Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error if the other reasons are supported by substantial evidence and the

23  erroneous reason does not negate the validity of the overall determination).

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

1    In November 2013, Dr. Hogg completed a mental functional capacity form in which he

2    checked numerous boxes indicating either marked or extreme limitations in every category.  Tr.

3    866-870.  Dr. Hogg indicated that "[i]t is abundantly clear that the patient has had a severely

4    disabling psychiatric condition.  I am in full support of the position that she has been incapable

5    of any meaningful employment since May of 2007."  Tr. 861.  The ALJ discounted this opinion

6    noting that it was completed almost a year and a half after the relevant period and that Dr. Hogg

7    provided very little explanation for such drastic limitations.  Tr. 29.  The ALJ notes that the only

8    explanation Dr. Hogg offers for his findings is that Ms. Munson "presented disorganized,

9    cognitively slowed, depressed, anxious, and was 'unable to stay on the simplest tasks,' such as a

10   review of her symptoms."  Tr. 29, 869.  However, the ALJ points out that Dr. Hogg's clinical

11   notes do not mention such significant difficulties.  Tr. 29.

12       An ALJ need not accept a medical opinion that is brief, conclusory and inadequately

13   supported by clinical findings.  *Thomas*, 278 F.3d at 957.  Moreover, a conflict between

14   treatment notes and a treating provider's opinions may constitute an adequate reason to discredit

15   the opinions of a treating physician or another treating provider."  *Ghanim v. Colvin*, 763 F.3d

16   1154, 1161 (9th Cir. 2014).  Here, as the ALJ notes, Dr. Hogg saw Ms. Munson for a range of

17   health issues including back pain and medication compliance but only one treatment note makes

18   mention of Ms. Munson's mental health issues.  Tr. 29, 827-52.  While this treatment note,

19   which is dated July 2012 (shortly after the relevant period) mentions "some" psychomotor

20   slowing and trichotillomania, it does not elaborate further on the nature or extent of these issues.

21   Tr. 827-829.  Moreover, while the treatment note states that Dr. Hogg "ordered tests about the

22   hair and mind issues", his subsequent clinical notes never mention such issues or testing again.

23   Tr. 29, 827-852.  Nor is there any mention in the treatment notes of Ms. Munson appearing

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

1  disorganized or unable to stay focused on simple tasks, or that Dr. Hogg directly observed her to

2  be anxious or depressed.  *Id.*  Under the circumstances, the ALJ reasonably rejected Dr. Hogg's

3  opinion as brief, conclusory and inadequately supported by clinical findings, as well as

4  inconsistent with his own treatment notes.[9]

5  **C.    Failure to Include Trichotillomania as a Severe Impairment at Step Two**

6         Ms. Munson contends the ALJ harmfully erred in failing to include trichotillomania as a

7  severe impairment at step two.  Dkt. 7 at 12.  The Court disagrees.

8         At step two of the sequential evaluation, the Commissioner must determine "whether the

9  claimant has a medically severe impairment or combination of impairments."  *See Smolen v.*

10 *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ did not

11 specifically consider Ms. Munson's trichotillomania at step two of the sequential evaluation

12 process.  Tr. 24.  However, the ALJ does discuss trichotillomania in discussing the medical

13 opinion evidence as well as Ms. Munson's testimony at later steps in determining the RFC.  Tr.

14 25-30.  Ms. Munson notes that her dermatologist, Dorothy Yang, M.D. opined that she suffered

15 from severe chronic relapsing trichotillomania, despite combined anti-anxiety medications, and

16 that this condition would serve as a significant distraction both to Ms. Munson and her co-

17 workers.  Dkt. 7 at 13; Tr. 864-865.  However, the ALJ properly discounted Dr. Yang's April

18 2014 opinion on the grounds that it was conclusory and did not contain a specific assessment of

19 Ms. Munson's functional capacity as it existed on or before the date last insured.[10]  Tr. 30.  There

20 is some indication that trichotillomania was diagnosed by Dr. Mitchell prior to the date last

21 insured.  Tr. 855-856.  However, a diagnosis, without more, is insufficient to establish a severe

22
   [9] The ALJ also offered some other reasons for discounting Dr. Hogg's opinion.  However, the Court need not
   address these other reasons in detail because, even if erroneous their inclusion is harmless.  *See*
23 *Carmickle*, 533 F.3d at 1162.
   [10] Ms. Munson does not challenge the ALJ's rejection of Dr. Yang's opinion.  Dkt. 7.

1   impairment.  *See, e.g., Bowen*, 482 U.S. at 146; *Febach v. Colvin*, 580 F. App'x. 530, 531 (9th

2   Cir. 2014).  Rather, to establish a severe impairment, Ms. Munson must demonstrate that her

3   trichotillomania affected her ability to perform basic work activities during the relevant period.

4   *See Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  Here, as the ALJ notes, there

5   is a lack of evidence, which the ALJ did not otherwise properly discount, linking trichotillomania

6   to loss of focus or distraction (or any other functional impact) on or before the date last insured.

7   Tr. 30.  Accordingly, the ALJ did not err in failing to include trichotillomania as a severe

8   impairment at step two.

9        Even if the ALJ had erred in failing to include trichotillomania as a severe impairment at

10  step two, Ms. Munson fails to demonstrate that this error was harmful.  *Ludwig v. Astrue*, 681

11  F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the

12  error and that the error was harmful).  An ALJ's failure to properly consider an impairment at

13  step two may be harmless where the ALJ considers all the functional limitations caused by that

14  impairment later in the decision.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Here,

15  the ALJ discussed trichotillomania in evaluating the medical opinion evidence as well as Ms.

16  Munson's testimony in the context of determining the RFC.  Tr. 25-30.

17       In sum, the ALJ did not harmfully err in failing to include trichotillomania as a severe

18  impairment at step two.

19  **D.    Ms. Munson's Symptom Testimony**

20       Ms. Munson argues the ALJ harmfully erred in discounting her symptom testimony.  Dkt.

21  7.  The Court disagrees.

22       The ALJ found the medical evidence of Ms. Munson's underlying impairments might

23  reasonably produce the symptoms alleged and did not find that Mr. Munson was malingering.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16

1    Tr. 26.  Consequently, the ALJ was required to provide specific, clear and convincing reasons for

2    rejecting Ms. Munson's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015).  If

3    the ALJ's reasons for discounting a claimant's subjective symptom testimony are supported by

4    substantial evidence in the record, the Court may not engage in second-guessing.  *Thomas*, 278

5    F.3d at 959.  Here, the ALJ provided at least one clear and convincing reason for discounting

6    Ms. Munson's testimony.

7         In evaluating the credibility of a claimant's testimony, the ALJ may consider a range of

8    factors including prior inconsistent statements concerning symptoms, inconsistency with the

9    medical evidence, as well as the claimant's daily activities.  *See Ghanim v. Colvin*, 763 F.3d

10   1154, 1163 (9th Cir. 2014); *Johnson*, 60 F.3d at 1434.  Here, the ALJ reasonably discounted the

11   credibility of Ms. Munson's testimony on the grounds that her demonstrated activities were

12   inconsistent with her complaints of disabling anxiety and depression.  *See Molina v. Astrue*, 674

13   F.3d 1104 (9th Cir. 2012).  Specifically, the ALJ noted that Ms. Munson "alleged that she was

14   unable to even be in her front yard for fear someone would stop to ask her for directions, yet, she

15   was able to travel to Mexico for a trip in February 2012 and, while not during the period at issue,

16   was also able to take a subsequent trip to Hawaii."  Tr. 27, 329.  Although Ms. Munson did

17   indicate that she took more medication when she traveled, the ALJ reasonably found Ms.

18   Munson's ability to make these trips inconsistent with her claims of "virtual agoraphobia."

19   Tr. 25, 27.  As the ALJ noted, these trips required several hour flights, airport check-ins and

20   standing in security lines, interacting appropriately with other people in crowded terminals and

21   onboard the airplane, as well as navigating customs and immigration check points.  Tr. 27.

22        The ALJ also discounted Ms. Munson's symptom testimony as inconsistent with the

23   relevant longitudinal medical record.  Tr. 26.  However, even if the ALJ erred in discounting Ms.

1  Munson's symptom testimony on this basis, its inclusion is harmless as it does not negate the

2  ALJ's other valid reason for discounting Ms. Munson's testimony i.e. as inconsistent with her

3  demonstrated activities. *See Carmickle*, 533 F.3d at 1162.

4         Accordingly, the ALJ did not err in discounting Ms. Munson's symptom testimony.

5  **E.     Lay Evidence**

6         Ms. Munson contends the ALJ erred in evaluating the lay witness statements of her

7  dentist, Scott Henricksen, DDS, her spouse, Scott Munson, her sister, Shirley A. Vormsberg, her

8  stepson, Jason Munson, and her brother-in-law, Frank A. Adams. Dkt. 7 at 16-18. The Court

9  disagrees.

10         To discount competent lay witness testimony, the ALJ "must give reasons that are

11  germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Where the ALJ

12  provides clear and convincing reasons for rejecting a claimant's subjective complaints, the same

13  reasons may be considered germane for rejecting similar lay witness testimony. *See Valentine v.*

14  *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

15         Dr. Henricksen submitted a letter dated March 6, 2014, stating that he had been Ms.

16  Munson's dentist since 1989 and that "since that time her personality and ability to function have

17  been severely impacted." Tr. 863. Dr. Henricksen stated it was normal for Ms. Munson to be

18  confused and lack coherency and her decision making and ability to follow through with or

19  remember previously discussed matters was very compromised. *Id.* He noted that "in recent

20  years [Ms. Munson's] severe anxiety has been consistent, and detached irrational behavior has

21  also been characteristic" and that her "level of disability that is observable to us in my office has

22  been consistently severe for many years." *Id.*

23         The ALJ properly noted that Dr. Henricksen was not an acceptable medical source for

1   purposes of a mental health diagnosis.  Tr. 27.  The ALJ indicated that he "did not find [the

2   opinion] supported more limitations than found above" in the RFC.  *Id.*  The ALJ reasonably

3   discounted this opinion on the grounds that it was conclusory, did not explain the basis for the

4   generalized assessments, and was rendered two years after the relevant period and lacked

5   specificity with respect to the period in question.  Tr. 27-28.  Moreover, Dr. Henricksen gave

6   similar testimony to that of Ms. Munson regarding the severity and impact of her symptoms of

7   anxiety, and difficulties with concentration and task completion.  The ALJ properly rejected Ms.

8   Munson's testimony about the severity of her limitations on the grounds that her claims were

9   inconsistent with her activities.  The ALJ's well-supported reason for rejecting Ms. Munson's

10  testimony applies equally well to Dr. Henricksen's testimony.  Thus, even if the ALJ had erred in

11  assessing Dr. Henricksen's testimony, it was harmless.  *See Molina*, 674 F.3d at 1122.

12      The ALJ also reasonably discounted the lay witness statements of Scott Munson, Shirley

13  A. Vormsberg, Jason Munson, and Frank A. Adams for the same reason he discounted Ms.

14  Munson's testimony.  Tr. 27.  As the ALJ notes, the lay witnesses gave similar testimony to that

15  of Ms. Munson regarding the severity and impact of her symptoms including agoraphobia,

16  anxiety, and difficulties with concentration and task completion.  *Id.*  For instance, Scott Munson

17  noted that Ms. Munson has extreme social phobia and was dependent upon him for activities

18  such as cooking, shopping, paying bills and doing dishes.  Tr. 332-333.  Ms. Vomsberg noted

19  that Ms. Munson had difficulty leaving the house because of her anxiety and that she took extra

20  medication when she traveled and mostly stayed in the condo when they traveled to Hawaii.  Tr.

21  324.  Mr. Adams also indicated that Ms. Munson mostly stayed in the condo on their trip.  Tr.

22  329-330.  Because the ALJ gave a clear and convincing reason for discounting Ms. Munson's

23  symptom testimony, this same reason may be considered germane for rejecting the similar

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 19

1  testimony of the lay witnesses.  *See Valentine*, 574 F.3d at 694.

2      Accordingly, the ALJ did not err in discounting the lay witness statements.

3  **F.    Scope of Remand**

4      In general, the Court has "discretion to remand for further proceedings or to award

5  benefits."  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may remand for

6  further proceedings if enhancement of the record would be useful.  *See Harman v. Apfel*, 211

7  F.3d 1172, 1178 (9th Cir. 2000).  The Court may remand for benefits where (1) the record is

8  fully developed and further administrative proceedings would serve no useful purpose; (2) the

9  ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony

10 or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

11 would be required to find the claimant disabled on remand.  *Garrison v. Colvin*, 759 F.3d 995,

12 1020 (9th Cir. 2014).  "Where there is conflicting evidence, and not all essential factual issues

13 have been resolved, a remand for an award of benefits is inappropriate."  *Treichler v. Comm'r of*

14 *Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

15     Here, the Court finds that not all essential factual issues have been resolved.  The Court

16 properly considered Dr. Connor's post-hearing opinion which was presented to the Appeals

17 Council in determining whether the ALJ's decision was supported by substantial evidence.

18 However, it would be inappropriate to hold, on the basis of this evidence, which the ALJ has not

19 have the opportunity to evaluate, that Ms. Munson is entitled to benefits as a matter of law.

20 *Harman*, 211 F.3d at 1180.  As the Ninth Circuit has previously held, "[t]he appropriate remedy

21 in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner

22 then may seek to rebut and the VE then may answer questions with respect to the additional

23 evidence."  *Id.*  Accordingly, the Court finds it appropriate to remand this case for further

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 20

1  administrative proceedings. *See Treichler*, 775 F.3d at 1107.

2                              **CONCLUSION**

3       For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

4  case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

5  405(g).

6       On remand, the ALJ should develop the record as necessary, reevaluate the opinion of

7  Dr. Connor, reassess and determine the RFC, and proceed with steps four and five of the

8  sequential evaluation process with the assistance of a vocational expert as necessary.

9

10      DATED this 28th day of July, 2017.

11

12                                              Thomas S. Zilly
                                                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 21